UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------X

BRIARWOOD FARMS, INC.

              Plaintiff,

    - against -

TOLL BROS., INC.

              Defendant.

---------------------------------X

07 CIV. 3657

Index No.

**COMPLAINT**

**JURY TRIAL DEMANDED**

BRIEANT

Briarwood Farms, Inc. ("Briarwood"), by and through its undersigned attorneys, for its complaint against Toll Bros, Inc. ("Toll"), respectfully alleges as follows:

**NATURE OF THE ACTION**

1. Plaintiff Briarwood seeks relief to redress a willful breach of contract by Toll relating to a contract for the purchase of real property in Rockland County, New York.. Briarwood is entitled to liquidated damages in the amount of $1.3 Million.

**THE PARTIES**

2. Briarwood is a New York Corporation, which maintains its principal office at 5 Eastview Road, Monsey, New York 10952.

3. Upon information and belief, Toll is a corporation organized under the laws of Delaware, with its principal office at 250 Gibraltar Road, Horsham, PA 19044. Toll has listed a form of its stock on the New York Stock Exchange.

**JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (a)(2), as this is an action between a citizen of a State and a citizen or subject of a foreign state and the matter in controversy exceeds the value of $75,000, exclusive of interest and costs.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (a)(3). This is a judicial district in which Toll is subject to personal jurisdiction. In addition, venue in this district is proper pursuant to 28 U.S.C. § 1391(a)(2), as Toll engaged in substantial activities here that gave rise to the claims at issue, including activities related to the Contract in question.

**RELEVANT FACTS**

6. Prior to November, 2005, Briarwood and Toll engaged in a negotiations concerning the sale of a parcel of real property located in the Village of Pomona, Town of Haverstraw, Rockland County. The subject real property and the project associated with it commonly referred to as "Halley Estates II."

7. On or about November 7, 2005 (the "Contract Date"), Briarwood and Toll executed an "Agreement of Sale" relating to Halley Estates II (the "Contract").

8. The Contract price was $325,000 per lot sold with an estimate of forty-one lots to be sold. Specifically, Paragraph 2 of the Contract provided:

> 2.  Purchase Price. The purchase price (the "Purchase Price") for the Property is Thirteen Million Three Hundred and Twenty-Five Thousand and no/100 Dollars ($13,325,000) based on a Property yield of 41 Lots. The Purchase Price shall be increased or decreased by $325,000 for each Lot more than or less than 41, respectively, which the Property yields. The Purchase Price shall be paid as follows ... :

9. Paragraph 2 of the Complaint, as set forth above, provided the parties flexibility should the site be unable to yield 41 unencumbered building lots, and required Toll to perform on the amount of unencumbered building lots approved by the municipality, with the purchase price being based upon the amount of unencumbered building lots approved.

10. Paragraph 2 of the Contract also provided for a deposit of $1.3 Million (the "Deposit"), which, at Toll's option could take the form of an irrevocable letter of credit.

11. Paragraph 8 of the Contract provided that upon Toll's default, the Deposit shall be retained as Briarwood's sole and exclusive remedy as liquidated damages.

12. The Contract provided at Paragraph 13 for Toll to have a forty-five day "Due Diligence Period" in which Toll could terminate the agreement without default. Specifically, the Contract provided:

> 13. <u>Due Diligence Period</u>. Between the time of execution of this Agreement and Closing, Seller agrees that Buyer, its representatives and consultants shall have the right to enter upon the Property to perform engineering, environmental and such other feasibility studies as Buyer determines in its sole discretion. Buyer and Seller further agree that within forty-five (45) days of the date of this Agreement (the "Due Diligence Period"), should Buyer desire not to purchase the Property as a result of such studies, or as a result of Buyer's dissatisfaction with the Property based upon Buyer's review of Seller's Plans or for any other reason whatsoever, Buyer shall have the right to terminate this Agreement upon written notice to Seller in which case the Deposit shall be returned to Buyer and there shall be no further liability of the parties hereunder. Failure to notify Seller prior to the expiration of the Due Diligence Period shall act as Buyer's election to waive this contingency. If Buyer causes any damage to the Property as a result of its studies performed pursuant to this Section, and Buyer elects not to purchase the Property, Buyer shall reasonably repair such damage. If Buyer terminates this Agreement pursuant to this Section 13, Buyer shall deliver, to Seller, without representation, warranty or recourse, copies of any materials (excluding any proprietary or confidential materials or information) developed by third parties for Buyer in connection with the Property.

13. Pursuant to the Contract, Toll's obligation to close the transaction was conditioned upon Briarwood obtaining "Final Approval" of a proposed subdivision plan, "such that upon posting of customary security and payment of application and inspection fees by [Toll], [Toll may file the plat and commence infrastructure improvements and apply for and obtain building permits." and evidence of the availability of water, sewer and other utilities.

14. Under Paragraph 16(b) of the Contract, unless a condition of the Final Approval contained modifications which had a "material adverse effect on the proposed development," Toll's approval of the modifications could not be unreasonably withheld.

15. Subsequent to the Contract Date, land values in Rockland County, New York declined.

16. As a result of the decline in land values, Toll determined that the Contract Price it agreed to pay for Halley Estates II was greater than the market value for the real property.

17. Beginning in mid-2006, Toll began a course of conduct designed to fabricate a reason to terminate the contract, including the objecting to municipal conditions which merely restated governing municipal ordinances (*i.e.* steep slope ordinances and grade ordinances), or conditions which would not have any material adverse effect on the project.

18. By letter dated December 22, 2006, Toll provided Briarwood with a letter which set forth its objections to municipal conditions. Most of the items contained therein were the subject of municipal ordinances which Toll waived by not terminating the Contract during the Due Diligence Period. This was reported to Toll in a letter from Briarwood's counsel dated December 28, 2006.

19. Remaining conditions, if any at all, did not have any material adverse effect on the project.

20. By letter dated January 22, 2007, Toll set forth that it was cancelling the Contract (the "Contract Termination").

21. By letter dated January 30, 2007, Briarwood disputed Toll's purported reasons for Termination, noting that the reasons appeared to be feigned.

FIRST CLAIM FOR RELIEF
(BREACH OF CONTRACT)

22. Briarwood repeats and realleges, as if set forth in full herein, the allegations contained in paragraphs 1 through 20 of this complaint.

23. Briarwood and Toll were (and are) parties to the Contract, which remains a binding contract.

24. Pursuant to the Contract, Toll had a specific period of time for it to analyze the condition of the subject real property, including municipal ordinances which would affect their proposed development.

25. Toll has repudiated and breached the Contract by declaring unequivocally that it was unilaterally terminating the transaction.

26. Until Toll repudiated the Contract, Briarwood fully performed all of its obligations thereunder.

27. At the time of Toll's breach, and through the date of this complaint, Briarwood was in position to, and intended to, fully perform its remaining obligations of the Contract.

28. Toll's breach damaged, and will continue to damage, Briarwood.

29. By reason of the foregoing, Briarwood is entitled to a judgment of this Court compelling Toll to pay the amount set forth in the liquidated damages provision, $1.3 Million, to Briarwood.

**CONCLUSION**

WHEREFORE, plaintiff Briarwood Farms, Inc. demands judgment from this Court: (1) for Breach of Contract in the amount of $1.3 Million; and 2) such other and further relief as to this Court seems just and proper.

May 3, 2007

_____
Joseph J. Haspel, PLLC
Attorney for Plaintiff
40 Matthews Street
Suite 201
Goshen, New York 10924
(845) 294-8950


Demand is hereby made for a trial by jury.

_____
Joseph J. Haspel