# EXHIBIT 3(b)

Buyer may approve at Buyer's sole discretion., which approval shall not be unreasonably withheld with respect to those modifications which do not have a material adverse effect on the proposed development. Buyer's consent to any such condition shall be deemed granted if no objection is delivered to Seller within 5 business days after Seller's delivery to Buyer of such proposed condition.

(c) If on or before the date of Closing all contingencies and conditions specified herein are not or cannot be satisfied, then Buyer shall have the option of (i) completing Closing hereunder if it so chooses at the Purchase Price, or (ii) canceling this Agreement in which case this Agreement shall become null and void and the Deposit shall be paid to Buyer. In the event such failure constitutes a failure of the condition set forth in Section 16(a)(i) or 16(a)(ii), Buyer shall be entitled to treat such failure as Seller's Default entitling Buyer to exercise the remedies set forth in Section 9 above.

(d) Seller agrees that no substantial modifications to the Subdivision Plan may be made without the Buyer's prior written consent, which shall not be unreasonably withheld with respect to those modifications which do not have a material adverse effect on the proposed development. Buyer's consent to any such modification shall be deemed granted if no objection is delivered to Seller within 5 business days after Seller's delivery to Buyer of such proposed modification.

17. <u>Survival</u>. Sections 6, 10, 12, 14, 17, 22 and 23(c) of this Agreement shall survive Closing hereunder. Any covenant, promise or obligation in this Agreement which is not by expressed language intended to be fulfilled or performed at Closing shall not merge into the deed of conveyance but shall remain in full force and effect and be binding on the parties hereto until fully performed or fulfilled.

18. <u>Intentionally Omitted.</u>

19. <u>Notices</u>. Any notice required to be given hereunder shall be given in writing and either (i) sent by United States registered or certified mail, with postage prepaid, return receipt requested, (ii) sent by Federal Express or another nationally recognized overnight courier, (iii) hand delivered, or (iv) sent by facsimile transmission with a hard copy sent on the same day by a nationally recognized overnight courier. All notices shall be deemed to have been given 48 hours following deposit in the United States Postal Service, or upon delivery if sent by overnight courier service, facsimile, courier or hand delivery. All notices shall be addressed to the following address or at such other address as may hereafter be substituted by notice in writing thereof.

To Seller:

    (at the address first set forth above)
    Attn: Joseph Herkowitz
    Telephone:
    Fax:

With a copy to:

    Isaac S Scheiner, Esq.
    441 Route 306
    Monsey, NY 10952
    Telephone: 845-364-0700
    Fax 845-364-0707

To Buyer:

    Toll Bros., Inc.
    250 Gibraltar Road
    Horsham, PA 19044
    Attn:  Mark Warshauer, Esquire
           Vice President and Counsel
    Telephone:  (215) 938-8260
    Fax:  (215) 938-8255

With a copy to:

    Wayne Patterson, First Senior Vice President
    (at same address)

    and

    Robert Parahus, Vice President
    (at same address)

20. <u>Entire Agreement</u>. This Agreement contains the entire agreement between Seller and Buyer and there are no other terms, obligations, covenants, representations, statements or conditions, oral or otherwise, of any kind whatsoever. This Agreement may be amended only by a writing signed by both parties.

21. <u>Assignment</u>. This Agreement may be assigned or transferred by Buyer without the prior consent of Seller to any affiliate or subsidiary of Buyer. Subject to the said provision regarding assignment by Buyer, this Agreement shall extend to and bind the heirs, executors, administrators, successors and assigns of the respective parties hereto.

22. <u>Miscellaneous</u>.

    (a)    As used herein, the phrases "the date hereof" and "the date of this Agreement" shall mean the date of execution (and delivery of the fully executed Agreement to the first party to sign) by the last party to sign this Agreement.

    (b)    This Agreement may be signed in one or more counterparts (or with counterpart signature pages) which, taken together, shall constitute a fully executed Agreement and shall be considered a single document. Any signature delivered by a party by facsimile transmission shall be deemed to be an original signature to this Agreement. In such event, the parties hereto shall promptly thereafter deliver to each other executed counterpart originals of this Agreement.

    (c)    Buyer and Seller agree to cooperate with each other and to take such further actions as may be requested by the other in order to facilitate the timely purchase and sale of the Property, and Buyer's development of the Property following Closing. Accordingly, Seller agrees to execute (or to cause Seller's affiliates as applicable) such other documents reasonably requested by Buyer, including any agreements of easement over other lands now or hereafter owned by Seller or Seller's affiliates for storm water drainage, utilities or access in connection with such development.

    (d)    If any date on which a time period scheduled to expire herein is a Saturday, Sunday or holiday, the subject date shall be extended to the next business day.

    (e)    **Seller and Buyer each agree to keep confidential the economic terms of this Agreement, including, without limitation, the Purchase Price, except as required by a court of law.**

    (f)    This Agreement has been drafted by counsel for both the Seller and Buyer, and accordingly, any ambiguities contained herein shall not be interpreted in favor of or against either party.

    (g)    If any term or provision of this Agreement or application thereof shall to any extent be invalid or unenforceable, the remainder of this Agreement shall not be affected thereby and each other term and provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

23. <u>Escrow of Deposit</u>.

    (a)    The Deposit shall be deposited on or before the date of this Agreement with and shall be held in escrow by the Escrow Agent. If the Deposit is in the form of a letter of credit, it shall not be drawn upon except as described in Section 2 above or upon a default by Buyer under the terms of this Agreement. The parties and Escrow Agent agree that the Deposit shall be applied as follows:

    (i)    If Closing is held, the Deposit shall be paid over to Seller and credited to the Purchase Price.

    (ii)    If Closing is not held by reason of Buyer's default, the Deposit shall be paid over to Seller and shall be retained by Seller as provided for in Section 8 above.

    (iii)    If Closing is not held by reason of Seller's default, the Deposit shall be paid over to Buyer for use and application by Buyer as provided for in Section 9 above.

    (iv)    If Closing is not held by reason of a failure of condition and not by reason of a default by Seller or Buyer hereunder, the Deposit shall be paid over to Buyer, neither party shall have any further liability or obligation hereunder, and this Agreement shall terminate.

(b)    The Deposit (if cash) shall be held in an interest bearing account.

(c)    Escrow Agent and its partners and employees are acting as agents only, and will in no case be held liable either jointly or severally to either party for the performance of any term or covenant of this Agreement or for damages for the nonperformance hereof, nor shall Escrow Agent be required or obligated to determine any questions of fact or law. Escrow Agent's only responsibility hereunder shall be for the safekeeping of the Deposit and the full and faithful performance by Escrow Agent of the duties imposed by this Section 23.

(d)    Escrow Agent shall be obligated to disburse the Deposit at Closing or upon any cancellation or termination of this Agreement, only upon the written instructions of both parties, should Escrow Agent in its sole discretion request such instructions; and in the absence of such instructions or in the event of any dispute, Escrow Agent shall be and is hereby authorized, but not obligated, to pay the entire amount of the Deposit into court, and any expenses to Escrow Agent for so doing shall be payable out of the Deposit. Notwithstanding the foregoing, until the expiration of the Due Diligence Period, Escrow Agent shall be obligated to return the Deposit to Buyer upon the unilateral instructions of Buyer following notice of Buyer's termination of this Agreement pursuant to Section 13 above.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals the day and year first above written.

              **BUYER:**

              **TOLL BROS., INC.**

ATTEST:

By:_____   By:_____(SEAL)
Name:              Name: ROBERT PARAHNJ
Title:               Title: GROUP PRESIDENT

               Date of Execution: 11-3-05


              **SELLER:**

ATTEST:             **BRIARWOOD FARMS, INC.**

By:_____   By:_____(SEAL)
Name:              Name: YOSEF HERSKOWITZ
Title:               Title: VP

               Date of Execution: 11/9/05

## JOINDER BY ESCROW AGENT AS ESCROW AGENT

       Isaac S. Scheiner, Esq., the Escrow Agent named in the foregoing Agreement of Sale, hereby joins in such Agreement to evidence its agreement to hold the Deposit, and otherwise to perform its obligations as escrow agent, all as provided for in Section 23.

ESCROW AGENT:

_____
Isaac S. Scheiner, Esq.

Date of Execution: 11-7-5

Z:\MARKW\AOS\APPROVAL.AOS
11/03/05  9:06AM

TB 0093

<u>SCHEDULE "A"</u>

All that certain plot, piece or parcel of land situate, lying and being in the Village of Pomona, County of Rockland and State of New York. Being more fully bounded and described as follows:

BEGINNING at a point on the westerly right-of-way line of Klingher Court, said point being located at the northeast corner of lands now or formerly of Inzar (Tax Lot 24.16-1-6.5); running thence

1) N71-07-37W along the northerly line of lands now or formerly of Inzar (Tax Lot 24.16-1-6.5), a distance of 141.97 feet; running thence along the northerly line of lands now or formerly Solomon (Tax Lot 24.16-1-1), the following two (2) courses and distances;
2) N70-34-50W, a distance of 258.25 feet;
3) N71-54-20W, a distance of 177.47 feet; running thence along the easterly right-of-way line of Call Hollow Road, the following eleven (11) courses and distances:
4) N24-29-07E, a distance of 340.92 feet;
5) On a curve to the right having a radius of 509.18 feet, an arc length of 153.80 feet;
6) N41-47-29E, a distance of 311.59 feet;
7) N43-47-26E, a distance of 199.40 feet;
8) N44-27-55E, a distance of 666.43 feet;
9) On a curve to the left having a radius of 746.68 feet, an arc length of 243.25 feet;
10) N25-47-59E, a distance of 189.08 feet;
11) N31-38-04E, a distance of 581.06 feet;
12) N33-15-34E, a distance of 302.81 feet;
13) N30-12-33E, a distance of 104.66 feet;
14) On a curve to the right having a radius of 1222.65 feet, an arc length of 74.98 feet; thence
15) S40-12-20E, along the southwesterly line of lands now or formerly of Highgate Development Corp. (Tax Lot 25.05-1-23) and lands now or formerly of Dean (Tax Lot 25.05-1-22) a distance of 1011.14 feet; thence
16) S35-22-40W, along the westerly line of lands now or formerly of Di Scenza (Tax Lot 25.09-1-3), now or formerly of German (Tax Lot 25.09-1-4) now or formerly of Rosenberg (Tax Lot 25.09-1-5), now or formerly of Wesolowski (Tax Lot 25.09-1-6), now or formerly of Poturi Costos (Tax Lot 25.09-1-7), now or formerly of Jeruchim (Tax Lot 25.09-1-8), now or formerly of Gibson (Tax Lot 25.09-1-9), and now or formerly of Cherney (Tax Lot 25.09-1-10), a distance of 1325.00 feet; thence
17) S34-47-40W, along the westerly line of lands now or formerly of Cherney (Tax Lot 25.09-1-10), now or formerly of Tubo (Tax Lot 25.09-1-11) and now or formerly of Jean (Tax Lot 25.09-1-12), a distance of 379.51 feet; thence
18) S46-06-44W along the westerly line of lands now or formerly of Jean (Tax Lot 25.09-

2511Desc

TB 0094

1-12), a distance of 37.16 feet; thence
19) S9-14-00W along the westerly line of lands now or formerly of Jean (Tax Lot 25.09-1-12), now or formerly of Rabin (Tax Lot 25.09-1-13) and now or formerly of Georgiou (Tax Lot 25.09-1-14), a distance of 565.58 feet; thence
20) S8-24-21W along the westerly line of lands now or formerly of Georgiou (Tax Lot 25.09-1-14), a distance of 86.42 feet; thence
21) N70-29-22W, along the northerly line of lands now or formerly of Diamond (Tax Lot 25.13-1-40), a distance of 155.00 feet; thence
22) S8-24-21W, along the westerly line of lands now or formerly of Diamond (Tax Lot 25.13-1-40), a distance of 192.00 feet; thence
23) N70-29-22W, along the northerly line of lands now or formerly of Caufield (Tax Lot 25.13-1-42), now or formerly of Dvorkin (Tax Lot 25.13-1-43) and now or formerly of Weissman (Tax Lot 25.13-1-44), a distance of 451.13 feet; thence
24) N71-07-37W along the northerly line of lands now or formerly of Weissman (Tax Lot 25.13-1-44), now or formerly of Lombardo (Tax Lot 24.16-1-6.4) and the northerly end of existing Klingher Court, a distance of 160.39 feet to the point of BEGINNING.

Containing 66.267 Acres.

2511Desc

TB 0095

RITZ SCHRSSR ZIGLER    Fax:845-634-5543    Nov 7 '05 15:41    P.03