# EXHIBIT 6(e)

single-family detached residence or any accessory building or structure on the same lot as a single-family detached residence except as provided in § 119-1 et seq. [Amended 9-27-2004 by L.L. No. 6-2004]

(2) All site development and all use of the property shall be in conformance with the approved site plan and such additional standards and safeguards as the Planning Board may impose as a condition of approval. No certificate of occupancy shall be issued until all such requirements have been met. Continued performance with the approved final site plan shall be a requirement of the continuing validity of any such certificate of occupancy.

(3) If, in the opinion of the Village Engineer, based upon the topography of a lot and the area in the vicinity of such lot, drainage and erosion control measures are required for the protection of neighboring lots and properties and the residents thereof, the Village Engineer shall review the drainage and erosion control measures proposed by a developer and shall make recommendations, as required, for modification of such measures. In addition, the Village Engineer shall recommend an amount to be deposited with the Village Treasurer to assure the proper completion of the approved drainage and erosion control measures, including any modifications required by the Village Engineer after the site plan for the lot is approved. Until the developer shall have deposited said amount with the Village Treasurer, no building permit shall be issued by the Building Inspector and no site work shall be undertaken by the developer. In the event that the Village Engineer, in consultation with the Building Inspector and the Deputy Village Attorney for Code Enforcement, determines at any stage of the development of the lot that the developer has failed to conform with the drainage and erosion controls required by the site plan or has failed to conform with field modifications to the site plan made after the site plan has been approved, the Village Engineer shall recommend to the Mayor that so much of the funds deposited with the Village Treasurer as are required to complete required drainage and erosion control work be withdrawn for that purpose by the Village, and the Mayor shall cause such funds to be withdrawn and such work to be accomplished on no less than 48 hours' written notice to the developer to be delivered personally, by the United States Postal Service, or, in the event that the giving of notice cannot be effected by such methods, by posting such notice conspicuously on the lot being developed. In the event that the required drainage and erosion control measures are complied with by the developer, the Village Engineer, upon being satisfied that such measures are reasonably adequate to protect neighboring properties and residents, shall so notify the Board of Trustees. At the next regular meeting of the Board of Trustees, the Board shall authorize the return to the developer of the funds so deposited. [Added 9-22-1997 by L.L. No. 11-1997]

(4) In addition to the sanctions contained in the preceding subsections for failure to conform to the final approved site plan, where an applicant fails to take all necessary steps to assure that, during construction, all construction debris, materials and fill are either removed from the construction site or neatly secured on the site so that construction debris, materials and fill are contained within the lot and are not spread to other lots or onto public streets, the applicant shall be

      guilty of a violation punishable by a fine not to exceed $250 for a first offense and $500 for each subsequent offense. Each day that the debris is not removed shall be deemed a separate and distinct offense.

B.   General standards. The Planning Board shall not approve a site plan unless it shall find that such plan conforms to the requirements of this chapter, as well as to other applicable laws and regulations, including but not limited to Chapter 126 of this Code. In reviewing the site plan, the Planning Board shall also take into consideration the public health, safety and general welfare and shall impose appropriate conditions and safeguards which are in harmony with the general purpose and intent of this chapter, particularly with respect to the following: [Amended 3-2-1998 by L.L. No. 1-1998; 4-23-2007 by L.L. No. 5-2007]

    (1)   Traffic access. The number, location and design of all proposed driveways, in terms of their width, grade, alignment, visibility and relationship to the existing street system and neighboring properties and land uses shall be such that maximum safety will be achieved and function properly provided for.

    (2)   On-site circulation and parking. Adequate and convenient off-street parking and loading spaces shall be provided to prevent parking in public streets of vehicles belonging to any persons connected with or visiting the proposed use, and the interior circulation system shall be adequate to provide safe access to all required off-street parking, including access for the handicapped.

    (3)   Pedestrian circulation. An adequate and safe pedestrian circulation system shall be provided to permit safe access to uses on the site from the street and from all parking areas.

    (4)   Landscaping and buffering. All parking, loading and service areas shall be screened in a reasonable manner at all seasons of the year from the view of adjacent residential lots and streets, the general landscaping of the site shall be designed in an attractive manner and, wherever possible, desirable natural features existing on the site shall be protected and retained.

    (5)   Lighting. Outdoor lighting shall be provided on the site to assure the safe movement of vehicles and persons and for security, and such lighting shall not create an undesirable impact on neighboring properties and streets.

    (6)   Drainage. The proposed stormwater drainage system shall be adequate to prevent any increase in the rate of surface runoff or otherwise contribute to downstream flooding during a storm of any magnitude up to and including a one-hundred-year-frequency storm.

    (7)   Water and sewage. The proposed systems for water supply and sewage collection and disposal on the site shall be adequate, and facilities shall be sufficient to handle the increase in service.

    (8)   Solid waste. Adequate provisions shall be made for the storage, collection and disposal of solid waste, and such facilities shall not be permitted to adversely affect neighboring properties or public facilities.

(9) Building design. The height, location and size of the proposed buildings shall be in conformity with the requirements of this chapter, and all such buildings and other structures shall harmoniously relate to each other, the site and neighboring properties.

(10) Signage. All proposed signs, including on-site directional signs and building signs, shall meet the requirements of this chapter, shall be adequate to provide reasonable information to the public and shall be in harmony with the design of the site and buildings and with neighboring properties.

(11) Other public needs. Other public needs and requirements, including the provision of recreation facilities and the protection of the environment, shall also be properly and adequately provided for. In furtherance of this subsection, the provisions of Chapter 119 of this Code shall be followed where applicable.

C. Procedure. The applicant shall submit to the Planning Board two copies of a completed site plan application form and 12 copies of a site plan. The site plan shall show the information listed below, drawn to a scale of one inch equals 30 feet or larger:

(1) Title of development, date, revision dates, if any, North point, scale, name and address of record owner and of applicant, if other than owner, and of the engineer, architect, landscape architect or surveyor preparing the site plan.

(2) Area and boundaries of the subject property, section and lot numbers of the subject property, adjacent zoning and special district boundaries, building or setback lines as required in this chapter, lines of existing streets and adjoining lots as shown on the tax maps and reservations, easements and other areas dedicated to public and special use.

(3) The names and mailing addresses of all owners of record of all adjacent properties.

(4) Location and dimensions of all existing buildings, retaining walls, fences, rock outcroppings, wooded areas, single trees with circumference of 25 inches or more measured at a height 4 1/2 feet above existing ground level at the base of the tree on the uphill side, watercourses, wetlands, water supply, sanitary sewerage, storm drainage, utilities, and any other significant and existing features on the site. Wetland delineations shall be mapped and staked in the field and certified by a licensed professional authorized by the New York State Department of Environmental Conservation to certify said wetlands. All significant existing features within 20 feet of all property lines shall also be shown. [Amended 11-25-2003 by L.L. No. 9-2003; 9-7-2004 by L.L. No. 4-2004; 4-23-2007 by L.L. No. 5-2007]

(5) Existing and proposed contours at a maximum vertical interval of two feet.

(6) Proposed use or uses of all land and buildings and, where only a portion of a property is to be occupied by the development, the boundaries and area of such portion (including required screening and setback areas).

 (7) Outline and elevations of the pavement of abutting streets and of proposed means of vehicular and pedestrian access to and from the site.

 (8) Location, layout and numbers of any proposed off-street parking and loading spaces.

 (9) Location and layout of any proposed recreation areas.

 (10) Proposed finished floor elevation of buildings, finished grade of walls, pavements and storm drains.

 (11) Detailed construction plans of proposed retaining walls, steps, ramps, paving and drainage structures.

 (12) Expected storm drainage loads.

 (13) Estimate of all earthwork, including the quantity of any material to be imported to or removed from the site, or a statement that no material is to be removed or imported.

 (14) Location and dimensions of all proposed water supply, sanitary sewerage, storm drainage and other utility lines and equipment, including connections to existing facilities.

 (15) Detailed landscaping plan including type, size and location of all materials used and plans for buffer screening and fencing.

 (16) Proposed location, type, design, size, color and illumination of all signs.

 (17) Proposed type, design, mounting height, location, direction, power and timing of all outdoor lighting.

 (18) Conditions specified by the Zoning Board of Appeals in the approval of any variance or special permit related to the subject property.

 (19) The following note shall be shown on the site plan: "No trucks in excess of 10,000 pounds gross weight shall be permitted to make deliveries to the site before 9:00 a.m. or after 6:00 p.m. Mondays through Fridays nor at any time during weekends and holidays." [Added 9-23-2003 by L.L. No. 7-2003]

D. Environmental review. Where required by the New York State Environmental Quality Review Act (SEQRA),[72] additional information concerning the environmental impact of the proposed development may be required as a part of the site plan application.

E. Review by other agencies.

 (1) Village agencies and officials. [Amended 9-25-2000 by L.L. No. 7-2000]

  (a) The Planning Board shall submit copies of the site plan to the Village

---

[72]. Editor's Note: See Article 8 of the Environmental Conservation Law.

Engineer, Building Inspector and Architectural Review Board or other Village agencies and officials as it deems appropriate, all of which shall submit a written report within 30 days of the date of forwarding for review and report. In the case of the Building Inspector, the report shall include a recommendation as to whether the proposed project shall be divided into phases, the precise number of which shall be recommended by the Building Inspector. However, the Planning Board shall have the authority to require phased site plan review whether or not recommended, and regardless of the source of the information upon which the Planning Board bases its decision to require phased site plan review. In the event that the Planning Board decides to adopt the recommendations of the Building Inspector for phased site plan review, or in the event that the Planning Board decides to require phased site plan review based upon information or recommendations other than the recommendation of the Building Inspector, the phases shall include, but not necessarily be limited to, tree clearing, structural measures for erosion control installation, drainage improvements, driveway installation and construction of the building. Each such phase shall require a separate written certificate of compliance, to be issued by the Building Inspector, upon his being satisfied that the required work for each such phase has been satisfactorily completed. Such certificate of compliance shall contain an authorization for the builder to proceed to the next succeeding phase, if any. There shall be mandatory inspection of each building site to which this chapter shall be applicable, after each rain event, as well as biweekly, whether or not there is a rain event. [Amended 12-23-2002 by L.L. No. 7-2002]

(b) Written inspection reports shall be prepared on a regular basis by the Building Inspector or the Village Engineer. In the event that an inspection report discloses violations of the approved erosion control plan for the project, the builder shall be required to remedy the violation immediately. If the violation of the erosion control plan is not corrected completely within three days of the date of notice of the violation to the builder, the Building Inspector shall issue a stop-work order pursuant to Chapter 47 of this Code. The Planning Board may submit copies to the appropriate fire district, the Rockland County Drainage Agency or the New York State Department of Transportation for information, review and comment regarding facilities under their jurisdiction, and to any other county, state or federal agency with jurisdiction. [Amended 11-13-2000 by L.L. No. 8-2000]

(2) The Planning Board shall refer to the Rockland County Planning Board for its recommendation all matters within the provisions of Article 12-B, §§ 239-l and 239-m, of the General Municipal Law which includes real property lying within 500 feet of the boundary of any city, Village or town, or from the boundary of any existing or proposed county or state parkway, thruway, expressway, road or highway, or from the existing or proposed right-of-way of any stream or drainage channel owned by the county or for which the county has established channel lines, or from the existing or proposed boundary of any state-owned land on which a public building or institution is situated, and any special permit

or variance affecting such use or property within a distance of 500 feet. The Rockland County Planning Board shall render its decision within 30 days of referral or within an extended period if agreed upon. If the Rockland County Planning Board fails to report within such thirty-day period or such longer period as has been agreed upon by it and the Planning Board, the Planning Board may act without such report. If the Rockland County Planning Board disapproves the proposal, or recommends modifications thereof, the Planning Board shall not act contrary to such disapproval or recommendation except by a vote of a majority plus one of all members thereof and after the adoption of a resolution fully setting forth the reasons for such contrary action. Within seven days after final action by the Planning Board, a report shall be filed of the final action it has taken with the County Planning Board which had made the recommendations, modifications or disapproval.

F. Public hearing. The time within which public hearings are required to be held by the Planning Board shall be calculated from the date of the completion of procedures required, if any, by the New York State Environmental Quality Review Act (SEQRA).[73] The Planning Board shall hold a public hearing within 62 days after receipt of a complete site plan application by the clerk of the Planning Board. Such hearing shall:

(1) Be advertised at least once in the official Village newspaper at least five days before such hearing.

(2) Be noticed, by certified mail, return receipt requested, to each owner of the property within 500 feet of the perimeter of the subject property as indicated on the application for site plan approval and at least 10 days prior to the public hearing.

(3) Be advertised by the installation of four posters, furnished by the Planning Board Secretary, on the four closest public roads in visible locations surrounding the proposed site at least 10 days prior to the public hearing.

G. The Planning Board shall, thereafter, approve, with or without modification, or disapprove such site plan within 62 days after the public hearing. The grounds for a modification or for disapproval shall be stated upon the record of the Planning Board. Within five days of the approval of the site plan, it shall be certified by the clerk of the Planning Board as having been approved, a copy filed in the clerk's office and a certified copy mailed to the owner. Notwithstanding the foregoing provisions, the time in which the Planning Board must take action on the site plan may be extended by mutual consent of the applicant and the Planning Board.

H. Special permit applications. Where special permit approval is required for the proposed use under this local law, insofar as practicable the special use permit and site plan approval procedures shall run concurrently.

I. As-built plan.

---

[73]. Editor's Note: See Article 8 of the Environmental Conservation Law.

    (1) Upon compliance of any development or redevelopment pursuant to an approved final site plan, and prior to the issuance of a certificate of occupancy, the applicant shall submit to the Code Enforcement Officer an as-built plan prepared and certified by a licensed engineer or surveyor showing the location of all site improvements as constructed. Such plan shall be based on a field survey.

    (2) Said as-built plan shall be reviewed by the Code Enforcement Officer to determine if it is in compliance with the Zoning Code, the approved final site plan and related requirements of the Planning Board and any special permit or variance. Where the Code Enforcement Officer determines that the as-built plan is not in compliance, he shall not issue a certificate of occupancy unless either the construction is corrected or a revised site plan is submitted to and approved by the Planning Board.

J.    Field changes. During construction, the Building Inspector may authorize or require, at his own determination or upon request of the applicant, minor adjustments to the approved site plan when such adjustments are necessary in light of technical or engineering considerations, the existence or materiality of which was first discovered during actual construction. Such minor adjustments shall be consistent with the spirit and intent of the approved site plan. Where unforeseen conditions are encountered which require any material change to an approved site development plan, or where the developer wishes to modify the approved plan for other reasons, an amended site plan shall be filed with the Planning Board for review and approval in accordance with the same procedures required for initial applications. [Amended 9-25-2000 by L.L. No. 7-2000]

K.    Expiration of approval. Approval of any final site plan shall expire unless a building permit and certificate of occupancy are applied for within a period of 18 months from the date of the signing of the final site plan by the Planning Board, except where the staging of development over a longer period of time has been specifically provided for at the time of site plan approval. The Planning Board may extend the site plan approval for not more than two six-month periods.

L.    Fees. Fees for site plan approval are listed in the fee schedule adopted by the Board of Trustees.[74] If a site plan or any portion thereof is revised to the extent that it warrants Planning Board reconsideration, a new application fee shall be required. [Amended 10-27-2003 by L.L. No. 8-2003]

---

[74]. Editor's Note: The fee schedule is on file in the Village offices.