# DONALD TIRSCHWELL
*Attorney at Law*

108 NEW HEMPSTEAD ROAD *New City, New York 10956*   TEL. (845) 634-4687
FAX (845) 634-6962

December 28, 2006

**VIA FAX & MAIL**
Jonathan G. Offenkrantz, Esq.
Toll Bros. Inc.
250 Gibraltar Road
Horsha, PA 19044
(215-938-8255)

    RE:  Agreement dated November 7, 2005 (as amended,
           the "Agreement"), between Briarwood Farms, Inc.
           ("Seller") and Toll Bros. Inc. ("Buyer")
           Our File No. 136499

Dear Mr. Offenkrantz:

This is to advise you that my office has substituted Isaac S. Scheiner, Esqs. office as attorney for Seller in the above mentioned transaction.

The Seller has requested that I respond to your December 22, 2006 letter.

The numbers referenced in this letter correspond to the numbered paragraphs reflected in your letter.

    1.  If Toll Brothers was not aware or did not discover during the due diligence period, there is a SPEDES permit required in New York State for any land development. The SPEDES permit will only permit five (5) acres to be disturbed at any one time. Seller and Seller's professional land surveyor were of the opinion that ten (10) lots of disturbance was more favorable to a developer. However, since you raise an objection to the provision that not more than ten (10) Lots will be under construction at any one time, the referenced note will be changed so that it corresponds with the statute. As you are aware, the five (5) acres under construction at any one time expires as to each lot when the lot is seeded and the driveway is installed. It would appear to my office that the present note is more favorable to your client, however the note will be changed in accordance with your client's objection.

DONALD TIRSCHWELL
*Attorney at Law*

Page 2

2. The original Halley Estates II subdivision map which is referenced in the Contract, reflected that the existing driveway from Calls Hollow Road previously installed with respect to the existing home was to be utilized for heavy construction traffic to gain access to the subdivision. If your client elects to utilize Klingher Court, Camp Hill Road with Klingher Court for access, all the Village is requesting is that not during construction vehicles necessary to improve the Halley Estates II subdivision, it is submitted that the Village's request, if the present road is damaged, represents a reasonable condition, i.e., that Klingher Court be re-paved. The question raised is why does the developer have to re-pave with one and a half inch wearing course, curb to curb for the entire length of Klingher Court? The issue raised by Toll Bros. relates to the fact that this is an additional burden on this Purchaser. Without conceding that in the event Purchaser elects not to utilize the existing dirt road for access to the subdivision with heavy construction equipment rather utilize Klingher Court, the Seller is offering to post Seller's bond with the Village of Pomona to cover the costs of the one and, a half inch wearing course, curb to curb, for the entire length of Klingher Court. It is submitted that if damage is done to Klingher Court, Purchaser should be responsible for repair of that damage caused by Purchaser's contractors or sub-contractors. Purchaser should bear responsibility for that damage, although Purchaser may have an argument that they should not have to re-pave all of Klingher Court with a one and a half inch wearing course.

3. During the Toll Bros. Inc.'s due diligence period, Toll Brothers must have come across the Village Ordinance that lots that are subject to steep slope requirements will be subject to further Planning Boards site plan review on a Lot to Lot basis. I am well aware of this ordinance, having commenced an Article 78 proceeding against the Village who applied the steep slope ordinance to a filed subdivision plot predating the Village's incorporation. It is submitted that Toll Bros. Inc. can raise no issue with respect to the Village ordinance which pre-existed the signing of the Contract of Sale and was or should have been discovered during the due diligence investigation.

4. It is a Village requirement that for preliminary approval that street lighting and four foot wide sidewalks be made a condition. It is submitted that Toll Bros. should have been aware of this Village requirement when Toll Brothers signed

DONALD TIRSCHWELL
*Attorney at Law*

Page 3

the Contract of Sale or discovered during the due diligence period. In any event, you are correct that this condition is usually waived by the Village at time of final approval. In the event that same is not waived by the Village, Seller will give an allowance at title closing for Seller's cost for installation of the four (4) foot sidewalks and the cost of street lighting contract with Orange & Rockland Utilities. Purpose of Seller's concession is not to evidence that the issue raised is correct, however, since my reading of your referenced letter indicates that Purchaser is seeking to cancel this Contract, Seller is making this concession. Frankly, Seller has no concern about making this concession because the Village of Pomona, in the normal course of events, waives these two requirements.

5. Relates to the Herring Homestead. Please indicate the basis for Toll Brothers assumption that this Homestead would be filled.

6. The maximum of four percent must be carried in the cul-de-sac reflects a mistake in the original map. Seller will grant an allowance to Purchaser at title closing for the cost of remediation of this error in the subdivision map, which was reviewed by Purchaser. It should be pointed out, that the error in the subdivision map should have been revealed to Purchaser during their due diligence, however, Seller would rather not litigate the issue and will pay the differential. Seller's estimate will be forwarded within the next few weeks.

7. The referenced note indicates that the existing drainage on the rear of the property lines of Lots 26 and 27 will be intercepted by the new drainage installation.

It is submitted that Toll Brothers engineers will verify the fact that doing construction of Lots 26, 27 and 28, it would be almost impossible to have any meaningful erosion control to protect the offsite stream which is below the steep slope bank in the rear of those Lots.

There are three (3) possible alternatives. The first alternative is to pipe the stream from along the border of Lot 25 and in the rear of Lot 26 with a 20 foot wide easement in the rear of Lots 27 and 28 to the road as presently depicted; or to an easement along the 10 foot on the property line of Lot 25 and 26 (10 feet on each side of the property line and install same in the road;

DONALD TIRSCHWELL
*Attorney at Law*

Page 4

or Lots 27 and 28 are removed from the purchase with an appropriate credit towards the purchase price.

The impossibility of the erosion control during construction of Lots 27 and 28 dictate that the Village Engineers comment is correct and that the necessary stream diversion is required. Please advise me as to which alternative is acceptable to Purchaser.

8. During the due diligence period, Toll Brothers should have reviewed the Village Code which requires the additional site landscaping and marking trees for saving which are located within the proposed building envelopes for areas of disturbance.

Seller submits that comment "8" is not a comment forming a basis for an objection by Purchaser.

Please review the above with your client and advise me of your client's position.

Very truly yours,

Donald Tirschwell

DT/kab

cc: Briarwoods Farms, Inc.