UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
BRIARWOOD FARMS, INC.,                          07 CIV. 3657

                Plaintiff,

  -against-
                                                ECF CASE
TOLL BROS., INC.,

                Defendant.

------------------------------------------------------------X


**TOLL BROS. SUR-REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF THE
CROSS-MOTION FOR SUMMARY JUDGMENT**


BLEAKLEY PLATT & SCHMIDT, LLP
One North Lexington Avenue
White Plains, New York
(914) 949-2700

*Attorneys for Defendant Toll Bros. Inc.*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .................................................................................................................................. 2

THE REPLY AFFIRMATION FAILS TO SET FORTH ANY ADMISSIBLE EVIDENCE ..... 2

    A.    The Reply Affirmation of Briarwood's Counsel Lacks Any Probative Value and Should be Rejected by this Court .................................................................................. 2

    B.    There Can Be No Disagreements that the Contract Required Briarwood to Obtain Steep Slope Permits In Conjunction with Obtaining Final, Unappealable Subdivision Approval. .................................................................. 3

    C.    Briarwood's Repudiation of its Contractual Requirements Permitted Toll To Terminate the Contract ......................................................................................... 5

    D.    Briarwood Never Resolved the Remaining Outstanding Issues at the Time it Refused to Obtain the Steep Slope Permits ............................................................ 6

CONCLUSION ............................................................................................................................... 9

**Cases**

*AFSCME v. County of Nassau*, 609 F. Supp. 695, 700 (E.D.N.Y. 1985) .......... 2

*Bambu Sales, Inc. v. Sultana Crackers, Inc.*, 683 F. Supp. 899, 910 (E.D.N.Y. 1988) .......... 2

*Beyha v. Couglin*, 789 F2d 986, 989-90 (2d Cir. 1986) .......... 2

*Donnelly v. Guion*, 467 F.2d 290, 293 (2d Cir. 1972); *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir.), *reh. denied*, 762 F.2d 1004 (1985) .......... 2

*First City Federal Sav. Bank v. Bhogaonker*, 684 F. Supp. 793, 798 (S.D.N.Y. 1988) .......... 2

*Lucente v. IBM*, 310 F.3d 243, 258 (2d Cir. 2002). .......... 6

*Schwimmer v. Sony Corp. of America*, 637 F.2d 41, 45 n.9 (2d Cir. 1980) .......... 2

*Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) .......... 2

*Sitts v. United States*, 81 F.2d 736, 741-42 (2d Cir. 1987) .......... 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
BRIARWOOD FARMS, INC.,                           07 CIV. 3657

               Plaintiff,

    -against-                                   ECF CASE

TOLL BROS., INC.,

               Defendant.

------------------------------------------------------------X


## TOLL BROS. SUR-REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF THE CROSS-MOTION FOR SUMMARY JUDGMENT


### PRELIMINARY STATEMENT

This sur-reply memorandum of law is respectfully submitted in further support of the cross-motion by defendant Toll Bros., Inc. ("Toll"), for an Order (1) denying plaintiff Briarwood Farms, Inc.'s ("Briarwood") motion for summary judgment, (2) granting Toll's cross-motion for summary judgment and dismissing Briarwood's Complaint, and (3) granting judgment on Toll's counter-claim for the return of the contract deposit.

Briarwood's papers in opposition offer no persuasive reason why Toll's cross-motion should not be granted. A cursory reading of Briarwood's papers in opposition reveals that the following dispositive fact remains wholly un-refuted:

> Briarwood failed, indeed refused, to secure the Steep Slope
> Permits necessary to obtain Final, Unappealable Subdivision
> Approval, thereby breaching the Contract.

1

# ARGUMENT

## THE REPLY AFFIRMATION FAILS TO SET FORTH ANY ADMISSIBLE EVIDENCE

### A. The Reply Affirmation of Briarwood's Counsel Lacks Any Probative Value and Should be Rejected by this Court

Affidavits not based upon personal knowledge have long been held not to comply with Rule 56(e) so as not to be entitled to any consideration by the court in determining a Rule 56 motion. *Beyha v. Couglin*, 789 F2d 986, 989-90 (2d Cir. 1986). Where a material fact is one with the attorney's personal knowledge, an attorney's affidavit is appropriate to support or oppose a motion for summary judgment. *Sitts v. United States*, 81 F.2d 736, 741-42 (2d Cir. 1987)**Error! Bookmark not defined.** (procedural fact within attorney's personal knowledge). However, here Mr. Haspel clearly has no personal knowledge of relevant events since he had no involvement with same.[1]

At best, the Haspel Affirmation is garden variety hearsay which has no probative value.[2] *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("a hearsay affidavit is not a substitute for the personal knowledge of a party."); *First City Federal Sav. Bank v. Bhogaonker*, 684 F. Supp. 793, 798 (S.D.N.Y. 1988) ("[A] litigant opposing summary judgment must give some affirmative indication that his version of the facts is not fanciful; a party may not rely on hearsay."); *Bambu Sales, Inc. v. Sultana Crackers, Inc.*, 683 F. Supp. 899, 910 (E.D.N.Y.

---

[1] Moreover, statements of ultimate facts and conclusions of law should not be included in affidavits since they do not reflect the affiant's personal knowledge. *Donnelly v. Guion*, 467 F.2d 290, 293 (2d Cir. 1972); *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir.), *reh. denied*, 762 F.2d 1004 (1985); *AFSCME v. County of Nassau*, 609 F. Supp. 695, 700 (E.D.N.Y. 1985) (affidavit should be confined to statements of fact based on personal knowledge, and legal arguments raised in affidavit should be raised in briefs and memorandum of law).

[2] A hearsay affidavit is a nullity on a motion for summary judgment. *Schwimmer v. Sony Corp. of America*, 637 F.2d 41, 45 n.9 (2d Cir. 1980).

1988) (hearsay testimony and opinion testimony that would not be admissible if testified at trial may not properly be set forth in an affidavit).

For the foregoing reasons, the Haspel Affirmation should be disregarded by the Court as Mr. Haspel has no personal knowledge of the underlying events at issue.

      **B.**    **There Can Be No Disagreements that the Contract Required Briarwood to Obtain Steep Slope Permits In Conjunction with Obtaining Final, Unappealable Subdivision Approval.**

As discussed in Toll's previous memorandum of law (page 15), Section 16(a)(iii) of the Contract required Briarwood to obtain "final subdivision approval" and the Village Steep Slope Ordinance confirmed that steep slope permits were to be secured in conjunction with final approval. (Harrington Aff., Exs. "3" and "7"). Village Engineer Corless confirmed that Briarwood had to obtain the steep slope permits in order to receive final approval. (*Id.*, Ex. "8," pp. 30-31). Try as it might, Briarwood cannot change that obligation or that it unequivocally refused and failed to do so. Toll was entitled to receive, and Briarwood was obligated to secure, the steep slope permits for the hypothetical houses designated on the 33 lots impacted by steep slopes on the preliminary subdivision plan in conjunction with obtaining final, unappealable subdivision approval.

In its Reply Affirmation, principally through the defective Haspel Affirmation, Briarwood argues that Toll failed to "offer any admissible evidence that Briarwood 'refused' to obtain final subdivision approval using hypothetical housing designated on the subdivision map". (Reply Affirmation, ¶ 11). This argument is specious. In support of its position, the Reply Affirmation contains Mr. Haspel's unsupported opinions concerning the facts and circumstances relative to the exchange of letters between Toll and Briarwood (Reply Affirmation at ¶¶ 5 through 18), the "true" meaning of Briarwood's counsel's January 30, 2007 letter and the real

3

reasons behind Toll's position in canceling the contract.

For the reasons stated above, the Reply Affirmation should be stricken as not being probative under Rule 56(e). Briarwood's inexplicable failure to submit an affidavit from Donald Tirschwell, Briarwood's land use counsel of record and the author of the January 30, 2007 letter, speaks volumes. Mr. Tirschwell's letter articulated Briarwood's adamant refusal to secure the required steep slope permits thereby warranting summary judgment in Toll's favor. Briarwood's failure to submit an affidavit from Mr. Tirschwell is fatal. Mr. Haspel's musings (as contained in the Reply Affirmation) about what "might" or "could have" happened are both relevant and inadmissible.

The import of Mr. Tirschwell's January 30, 2007 letter is clear and unequivocal. In response to Toll's demand to obtain the steep slope permits, Briarwood's counsel, Mr. Tirschwell, unequivocally advised Toll by letter dated January 30, 2007, that Briarwood would not secure the multiple steep slope permits required for *final, unappealable* subdivision approval:

> Item 3 – During the due diligence period, Toll Bros. had the obligation and the opportunity of reviewing the Village's Subdivision Regulations and Zoning Code. The Zoning Code and subdivision regulations have not changed since the date the Contract was signed or since the date that the due diligence period expired. ***In order for the Purchaser [Toll] to obtain building permits, Purchaser [Toll] must comply with the Village Codes.*** It is impossible to comprehend Toll Bros. claiming that 'they did not know that the gun was loaded'. The referenced requirement 'has been on the books' of the Village and if it was missed by Toll Bros., that is Toll Bros. fault and not an obligation of Seller [Briarwood] or a basis for Toll Bros. to claim cancellation of the Contract of Sale.
>
> The Village's steep slope ordinance does not permit the Village to deny a building permit, however, the steep slope ordinance does permit the Village Planning Board to require certain conditions as to those lots which are subject to the steep slope ordinance. Again, the steep slope

4

> ordinance was 'on the books' when the Contract was signed and during a due diligence period.
>
> Toll Bros. has no right to cancel the Contract because they failed to take notice of the Village's steep slope requirements.

(Harrington Aff., Ex, "13," p. 3)(emphasis added).

In addition, no where in Mr. Tirschwell's letter does he advise Toll that Briarwood will obtain the steep slope permits for the hypothetical houses or, as Briarwood now argues, for individual lots based upon building plans provided by Toll. (*See* Reply Affirmation, ¶¶ 22 to 26). As such, Briarwood's argument that Toll never provided individual building plans to Briarwood and that if Toll had done so, Briarwood "could have" secured the steep slope permits for such plans in conjunction with obtaining final subdivision approval is not supported by any evidence.

Moreover, as previously argued in Toll's memorandum of law, Briarwood's claim defies common sense. Until Toll had prospective buyers for individual lots, it could not provide with certainty building plans for the lots. (Zalinsky Dec., ¶ 28). Toll is a custom builder of luxury homes and Toll develops individual site plans depending on the desires of its buyers. *Id.* As such, Toll could not begin the process of drawing detailed site plans for a potential 41-lot subdivision until it had secured the fundamental consideration to which it was entitled under the Contract – final, unappealable subdivision approval. *Id.* Until Toll knew it had final, unappealable subdivision approval, it would have been a waste of resources for Toll to provide individual or site specific plans to Briarwood. *Id.*

    **C.**    **Briarwood's Repudiation of its Contractual Requirements Permitted Toll To Terminate the Contract**

Incredibly, Briarwood's Reply Affirmation argues for the first time that there was no

5

contractual deadline for Briarwood to obtain final subdivision approval. Briarwood's refusal to obtain the steep slope permits, however, constituted--as a matter of law--a clear and unequivocal repudiation of its performance obligations under the Contract. As stated above, Briarwood's counsel unequivocally advised Toll by letter dated January 30, 2007, that Briarwood would not secure the multiple steep slope permits required for *final, unappealable* subdivision approval. (Ex. "13"). Once Briarwood failed to resolve a material condition to Toll's liability under the contract, Toll was permitted to either treat the repudiation as a breach of the contract or continue to treat the contract as valid. *Lucente v. IBM*, 310 F.3d 243, 258 (2d Cir. 2002).

By failing to deliver final approval and by refusing to secure the steep slope permits for 33 out of 41 lots, among other things, Briarwood unequivocally failed to perform the Contract requirements, entitling Toll to cancel the Contract and be refunded the $1,325,000 Contract deposit. (Ex. "3," Section 16(c)(ii) p. 8).[3] *See Franconia Assocs. v. United States*, 536 U.S. 12 (2002); *Lucente v. IBM*, 310 F.3d 243, 258 (2d Cir. 2002); *Norcon Power Partners v. Niagara Mohawk Power Corp.*, 92 N.Y.2d 458 (1998).

Taken to its logical conclusion, Briarwood's argument would allow it to repudiate the contract, as it clearly did, then after Toll properly cancelled same, tender final subdivision approval 3 years later, which, of course, it now claims it is almost, but not quite in the position to do. We respectfully submit this specious argument requires no further response.

### D. Briarwood Never Resolved the Remaining Outstanding Issues at the Time it Refused to Obtain the Steep Slope Permits

Briarwood's failure to secure the steep slope permits required for final subdivision

---

[3] Section 16(c)(ii) states "If on or before the date of closing all contingencies and conditions specified herein are not or cannot be satisfied, then Buyer [Toll] shall have the option of …(ii) canceling this Agreement in which case this Agreement shall become null and void and the Deposit paid to Buyer."

approval is alone dispositive, warranting a grant of summary judgment to Toll. However, in addition to Briarwood's failure to obtain steep slope permits, Toll raised the following objections which it directed Briarwood to resolve: (1) Repaving of Klinger Court; (2) Slopes of certain streets from 10% to 4% affecting cul-de-sacs; (3) Diversion of a stream; and (4) Landscaping requirements. (Ex. "12"). As previously argued in Toll's memorandum of law, Briarwood's failure to cure these remaining deficiencies also constituted independent and equally dispositive repudiation of the Contract, warranting the aware of summary judgment.

- <u>Repaving of Klinger Court</u>

Contrary to the assertion by Briarwood, Mr. Tirschwell's January 30, 2007 letter withdrew Briarwood's prior offer to pay for the repaving of Klinger Court. (Harrington Aff., "Ex." 13. As such, as of January 30, 2007, the material condition relative to the paving of Klinger Court by Toll was unacceptable as it gave the Village the unrestricted right to require a complete resurfacing rather than requiring repair for damage actually caused. (Ex. "10"; Zalinsky Dec., ¶ 29).

- <u>Village Mandate to Decrease Grade of Cul-de-Sac Road</u>

Likewise, Mr. Tirschwell's January 30, 2007 letter fails to resolve the issue of the decrease of the cul-de-sac road and advises Toll that it should have been aware of the 4% grade requirement. (Harrington Aff., "Ex" 13, p. 2). As stated in Toll's memorandum of law, Toll cited the Village's requirement that the slope of the road servicing the cul-de-sac be reduced from 10% to 4%. Such work would force Toll to incur approximately $568,000 in blasting, grading and related costs, as well as significantly impact the value of the 10 premium cul-de-sac lots. (Zalinsky Dec., ¶ 29). Briarwood advised Toll that the 4% grade was a Village requirement and that if Toll missed such requirement during the due diligence period, it was

Toll's fault and not Briarwood's. (Ex. "13"). However, this argument misses the point. The original plans called for a 10% grade which was consistent with the Village Code and acceptable to Toll. The Village Engineer, in the exercise of his statutory discretion, unilaterally altered the roadway slope to 4%, imposing at least $560,000 in additional costs upon Toll. Toll advised Briarwood that its refusal to either cure this problem or agree to accept the cost of same constituted an adverse material condition under the Contract.

- <u>Easement Required for Drainage Swale in Rear of Lots 25 Through 28</u>

The preliminary plan as approved by Toll did not require any drainage easements. (Zalinsky Dec., ¶ 29; Ex. "10"). Storm water was to be addressed via a swale on the subdivision periphery which would keep the water substantially off the subdivision site. Zalinsky Dec., ¶ 29; Exhibit "10." However, during the Planning Board review, the Town Engineer rejected the swale concept and required the storm water to be diverted via underground piping over and through four subdivision lots (Lots 25-28) to a drainage basin within the subdivision. (Zalinsky Dec., ¶ 29; Ex. "10"). This would require the creation of easements burdening each of the four impacted lots, which would arguably adversely impact their value and marketability. *Id.* To make matters worse, the underground piping which required the easements benefited adjacent, existing single-family homes, not the proposed impacted lots.

- <u>The Village's Enhanced Landscaping Requirements</u>

The Reply Affirmation confirms that Briarwood never undertook any measure to resolve this issued raised by Toll. (Reply Affirmation, ¶ 34). As previously stated in its memorandum of law, the landscaping obligations were dramatically changed. (Zalinsky Dec., ¶ 29; Ex. "10"). The original plans reviewed by Toll during the due diligence period provided for typical landscaping throughout the subdivision. (Zalinsky Dec., ¶ 29; Exhibit "10"). However, the

8

revised plans which were the subject of the Planning Board's preliminary approval resolution, required installation of decorative plantings far in excess of that initially required. (Zalinsky Dec., ¶ 29; Exhibit "10"). Therefore, there was substantial confusion concerning the extent, nature and cost of the landscaping that had to be installed. (Zalinsky Dec., ¶ 29; Exhibit "10"). The potential additional cost could easily have exceeded $100,000. Zalinsky Dec., ¶ 29; Exhibit "10." Toll therefore required that this issue be clarified. (Ex. "12"). Briarwood refused to do so. (Ex. "13").

Collectively the four remaining adverse conditions would have imposed additional costs of at least $775,000, and if left unresolved, would have had a significant adverse impact on the market value of multiple building lots. Given Briarwood's refusal to address these adverse conditions, Toll was justified in terminating the Contract. (Zalinsky Dec., ¶ 30).

Similarly, Briarwood's failure to cure the remaining adverse deficiencies identified by Toll also constitutes an independent, equally dispositive repudiation of the Contract, warranting the award of summary judgment to Toll.

## CONCLUSION

For the foregoing reasons, Briarwood's summary judgment motion should be denied, Toll's cross-motion granted, Briarwood's Complaint dismissed, and Toll granted a judgment on its counterclaim for the return of the Contract deposit.

9

Dated: White Plains, New York
       August 1, 2008

                                            BLEAKLEY PLATT & SCHMIDT, LLP
                                            *Attorneys for Defendant*

BY: _____
                                            WILLIAM P. HARRINGTON (WH5262)
                                            MICHAEL P. BENENATI (MPB9669)
                                            ONE NORTH LEXINGTON AVENUE
                                            P.O. BOX 5056
                                            WHITE PLAINS, NY 10602-5056
                                            (914) 949-2700